## UNITED STATES *v.* LESH PAPER Co. (No. 2230).[1]

1. EVIDENCE, ADMISSIBILITY—CONCLUSION OF LAW.

   A question asked a witness as to whether or not, in his opinion, the merchandise at bar was the kind described in a certain paragraph of the tariff act, quoting the paragraph, is not objectionable as calling for the witness's legal conclusion.

2. POSTER PRINTING PAPER.

   Paper invoiced as "glazed tinted poster paper," shown to be unsuitable for covers or bindings and mainly used for printing handbills, dodgers, election ballots, posters, and supplements to newspapers, particularly baseball editions, was properly classified by the Board of United States General Appraisers as "Printing paper * * * suitable for the printing of books and newspapers, but not for covers or bindings" under free list paragraph 567, tariff act of 1913, rather than as paper not specially provided for under paragraph 332.

### United States Court of Customs Appeals, May 24, 1923.

APPEAL from Board of United States General Appraisers, Abstract 45375.

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Samuel Isenschmid*, special attorney, of counsel), for the United States.
*James M. Ogden* and *Samuel E. Garrison* for appellee.

[Oral argument May 8, 1923, by Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

HATFIELD, Judge, delivered the opinion of the court:

The merchandise in question was invoiced as "glazed tinted poster paper." It was assessed for duty at the rate of 25 per cent ad valorem under paragraph 332 of the act of 1913 as paper not specially provided for.

The importers duly protested the collector's classification and assessment, claiming the merchandise to be properly entitled to free entry under the provisions of paragraph 567 of the tariff act of 1913, as amended by section 600 of the act of September 8, 1916 (vol. 39, U. S. Stat. L., p. 795), as amended by the act of April 23, 1920 (vol. 41, U. S. Stat. L., p. 573).

[1] T. D. 39665.

Paragraph 567 of the act of 1913, as amended, reads as follows:

Printing paper (other than paper commercially known as hand-made or machine-hand-made paper, Japan paper, and imitation Japan paper by whatever name known), unsized, sized, or glued, suitable for the printing of books and newspapers, but not for covers or bindings, not specially provided for in this section, valued at not above 5 cents per pound; decalcomania paper not printed.

The Board of General Appraisers sustained the protest and the Government appealed.

On the hearing it was agreed by the parties hereto that there was no issue as to value, as the merchandise had been invoiced and appraised at 4 cents per pound.

The importers submitted the testimony of four witnesses, each qualified by many years of study and experience, in an effort to prove that the merchandise in question was "printing paper, * * * suitable for books and newspapers, but not for covers or bindings * * *." The testimony of the witnesses was to the effect that the paper in question was printing paper, sometimes called poster paper or colored print; that its principal use was for the printing of handbills, dodgers, election ballots, posters, supplements to newspapers, particularly baseball editions; and that the only difference between the paper in question and the white paper used in the printing of newspapers was in the "coloring in the finish," and that it was not used for any different purpose than the white printing paper.

Three of the witnesses testified that, in their opinion, the paper involved in this case was printing paper, suitable for books and newspapers, but not for covers or bindings. This particular testimony was objected to by the Government on the hearing and exceptions taken to its admission, for the reason, as stated by counsel for the Government, that the questions as propounded called for conclusions of law.

Without intending in any way to approve the form of these questions, we think that the admission of the testimony by the board was not error. In each instance the question called for an opinion as to the kind and character of the paper in controversy, and although the exact language of paragraph 567 was incorporated into the question, the question of law to be determined by the board was not included therein.

Having reached the conclusion that the testimony was properly admitted by the board, we have considered it with the other testimony in the case.

There was no evidence offered by the Government.

From the testimony submitted the Board of General Appraisers found that the merchandise in question in this case was in fact printing paper of the kind described in paragraph 567 of the act of

1913, as amended, suitable for books and newspapers, but not for covers or bindings.

After a careful study and analysis of the testimony submitted in this case, we think the finding of the Board of General Appraisers is sustained by the evidence.

The decision of the Board of General Appraisers is *affirmed.*